IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL MATTHEW NORTON, | § | |
| *Plaintiff*, | § | |
| v. | § | CIVIL ACTION NO.: 3:16-CV-0357 |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § | |
| *Defendant*. | § | |

## **MEMORANDUM AND ORDER**

Plaintiff Daniel Matthew Norton filed this case under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying his request for social security benefits. Norton moved for summary judgment (Dkt. 10) and the Commissioner responded (Dkt. 11). After considering the pleadings, the record, and the applicable law, the court **DENIES** Norton's motion and **AFFIRMS** the final decision of the Commissioner.[1]

### **I. Background**

**1. Factual and Administrative History**

Norton filed a claim for social security disability insurance benefits and supplemental security income benefits on July 23, 2013. He alleged the onset disability as of June 6, 2013 due to neuropathy in the cervical spine and degenerative disc disease. His claim was denied on initial review and reconsideration. The administrative law judge (ALJ) held a hearing on September 23,

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including entry of final judgment. Dkt. 15.

2015 at which Norton, a medical expert, and a vocational expert testified. The ALJ issued an unfavorable decision on October 28, 2015. The Appeals Council denied review on August 23, 2016, and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

   2. **Standard for District Court Review of the Commissioner's Decision**

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law[2], "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.* The courts strive for judicial review that is

---

[2] Conclusions of law are reviewed *de novo*. *Western v. Harris,* 633 F.2d 1204, 1206 (5th Cir. 1981)

"deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

The court weighs four types of evidence in the record when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir.1991); *Hamilton-Provost v. Colvin*, --- F. App'x ----, 2015 WL 925728, at *3 (5th Cir. 2015).

3. **Disability Determination Standards**

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." Work is "substantial" if it involves doing significant physical or mental activities, and "gainful" if it is the kind of work usually done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972; *Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014).

In the second step, the ALJ must determine whether the claimant has a severe impairment. Under applicable regulations, an impairment is severe if it "significantly limits your

physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.20(c). The Fifth Circuit construes these regulations as setting forth the following standard: "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

If the claimant is found to have a severe impairment, the ALJ proceeds to the third step of the sequential analysis: whether the severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets one of the listings in Appendix 1, the claimant is disabled. If the ALJ finds that the claimant's symptoms do not meet any listed impairment, the sequential analysis continues to the fourth step.

In step four, the ALJ must decide whether the claimant can still perform his past relevant work by determining the claimant's "residual functional capacity" (RFC). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. 404.1545). The ALJ must base the RFC determination on the record as a whole and must consider all of a claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545; s*ee also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the claimant meets her burden, the burden shifts to the commissioner at step five to show that the "claimant is capable of

engaging in some type of alternative work that exists in the national economy." *Id.* Thus, in order for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Brown*, 810 F.2d 1296, 1304 (5th Cir. 1998).

### 4. The ALJ's Decision

The ALJ performed the standard 5-step sequential analysis. The ALJ found that Norton met the insured status requirements of the Social Security Act through December 31, 2018, and had not engaged in substantial gainful activity since June 6, 2013, his alleged onset date. The ALJ found that Norton had the severe impairments of cervical degenerative disc disease, lumbar degenerative disc disease, cervical radiculopathy and spondylosis without myelopathy, osteoarthritis of the left knee, status-post patella tendon transposition of the right knee, congestive heart failure, and obesity, none of which met or equaled the severity of a listed impairment in Appendix 1. Dkt. 8-3 at 29-33.

The ALJ further found that Norton had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except that he can "occasionally climb stairs and ramps and crouch, balance, and stoop; no climbing of ropes, ladders, or scaffolds; no crawling or kneeling; no overhead reaching with left non-dominant arm; frequent handling and fingering with bilateral hands." Dkt. 8-3 at 33-34. Based on the testimony of a vocational expert, Cassandra Humphreys, the ALJ found Norton could not perform his past relevant work as a restaurant and cafeteria cook, but had some transferable skills to light work that enabled him to perform jobs existing in significant numbers in the national economy. Therefore, the ALJ found Norton not disabled under the Act. *Id.* at 39-40.

## II.  Analysis

Norton argues that the ALJ erred in her RFC assessment preceding step 4 and at step 5 of the sequential analysis. Specifically, Norton argues (1) that the ALJ's RFC assessment is not supported by substantial evidence because she failed to (A) properly weigh the medical opinion evidence and (B) properly assess his credibility. Norton further argues (2) that the ALJ's finding at step 5 is not supported by substantial evidence because she based her decision on testimony from the vocational expert after an incomplete hypothetical question.

1. **The RFC Assessment**

1.A  **Weight of Medical Opinion Evidence in RFC Assessment**

Norton contends that the ALJ erred in giving no weight to the opinion of a treating physician, Dr. Elizabeth McMillan, and only partial weight to the opinion of the medical expert who testified, Dr. Vern Laing.

*__Dr. McMillan's Opinion.__* The treating physician's opinion regarding the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Newton* at 455. Nonetheless, the treating physician's opinions are not conclusive. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). When good cause is shown, the ALJ is free to reject, assign less weight, little or even no weight, to the opinion of a treating physician:

> Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

*Newton*, at 456; *see also Greenspan*, 38 F.3d at 237. In addition, the ALJ's decision must state reasons for declining to give a treating physician's opinions controlling weight. *Newton*, at 455.

The ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2) when deciding whether good cause exists to discount the opinion of a treating physician: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Id.*

Dr. McMillan completed a residual functional capacity questionnaire for Norton on July 13, 2014. Dkt. 8-8 at 115-16. Dr. McMillan reported that she had contact with Norton at "medical visits, monthly 2 mos." Dr. McMillan noted Norton's diagnosis of cervical spondylosis with radiculopathy and characterized his prognosis as poor. She opined that he could never lift even less than 10 lbs., could never grasp, turn or twist objects with either hand, could never engage in fine manipulation with the fingers of either hand, and could never reach with either arm. She concluded he would be absent more than four times per month due to his impairments or treatment, and was not physically capable of working an 8 hour day, 5 days per week. The ALJ gave no weight to Dr. McMillan's opinion, in part "because there is not enough longevity with the treatment relationship (only seen him twice)." Dkt. 8-3 at 37. The ALJ properly considered the brief length of the treatment relationship in deciding the weight to give the medical opinion. Norton's medical records do not show a pattern of "longitudinal care" by Dr. McMillan that weighs in favor of giving great deference to her opinion. *See Taylor v. Astrue*, 245 Fed. App'x 387, 391 (5th Cir. 2010) (citing *Hernandez v. Heckler*, 704 F.2d 857, 860-61 (5th Cir. 1983)).

In addition, the ALJ considered the evidence in the medical record and explained that Dr. McMillian's opinion 1) was not supported by objective medical evidence found in his MRI and

x-ray results; 2) was inconsistent with evidence that Norton was able to prepare simple meals and do light housework; and 3) was inconsistent with recent physical examinations showing only mild neck pain with motion. Dkt. 8-3 at 37. As set forth below, the medical records sufficiently support the ALJ's conclusion.

Norton had an MRI on October 12, 2012 that indicated "mild disc disease with levels of borderline canal stenosis and foraminal stenosis. Effect on exiting nerve roots is difficult to evaluate secondary to significant motion artifact." Dkt. 8-8 at 52-53. Over the next several months, Norton was treated with epidural steroid injections and pain medication and reported doing well. *Id.* at 16-19, 45-48. Despite this, Norton reported at a visit to a physician assistant in July 2013 that he had to quit his job due to pain and not having funds to get lab work. He was given samples of Cymbalta and scheduled for follow up in six weeks. *Id.* at 12-15. There is no evidence in the record suggesting he returned for the suggested follow-up.

The record indicates Norton was next seen by the physician assistant on January 2, 2014. Norton continued to report neck pain and complained of dizziness, but said he was walking daily. The physician assistant referred him to physical therapy and ordered an MRI. *Id.* at 109-113. Norton had another MRI on January 13, 2014. *Id.* at 99-100.

Norton's initial physical therapy examination on February 6, 2014 showed some limitations in range of motion, but his rehabilitation potential was good and he had no contraindications to therapy. Therapy was planned for 2-3 times per week. *Id.* at 102-105. On March 13, 2014, Norton saw a physician at Intervention Spine and Pain Management. He was assessed with cervical spondylosis without myelopathy and cervical radiculopathy. The suggested treatment plan was "bilateral diagnostic facet injection." *Id.* at 106-08. He returned to Intervention Spine and Pain Management on May 13, 2014, claiming minimal relief from the

facet block and no relief from physical therapy, which he reported attending only twice over a 6 week period. *Id.* at 85-86. He reported that he did light housework such as dusting and vacuuming, light yard work, and could get dressed, but is unable to reach above his head, to do any heavy lifting, or to do activities with his left arm. Epidural steroid injections were prescribed. *Id.*

Dr. McMillan examined Norton approximately two months later, on May 19, 2014. She noted that he had an appointment in June for "nerve injection." She noted no new symptoms, but did note neck pain. *Id.* at 93-96. McMillan referred Norton for an MRI of the lumbar spine, which was performed on August 18, 2014, Dkt. 8-10 at 7-9, but there are no treatment notes in the record from a follow-up visit with Dr. McMillan, and the results of the August MRI were not available to McMillan at the time she completed the questionnaire.

Notes from an October 3, 2014 office visit to Coastal Heath & Wellness in Texas indicate that medication and steroid injections were "relieving factors" for Norton's neuropathy. Dkt. 8-9 at 76. At a follow up visit on October 21, 2014, Norton complained of severe pain and was instructed to continue his medications. *Id.* at 68-70. He returned on January 10, 2015 for refills on pain medication. *Id.* at 63. On February 9, 2015, Norton described his pain severity as level 5 and his problem as stable. He had mild pain in the cervical spine with motion and severe pain with motion of the lumbar spine. He reported relief of his symptoms with medications, which he was instructed to continue taking. *Id.* at 59-62.

Norton argues that the ALJ improperly relied on her own interpretation of the MRIs and x-rays to reject the opinion of Dr. McMillan. This argument ignores the ALJ's reliance on Norton's own reporting of his activities and his doctors' examination notes. In addition to identifying evidence in the medical record that conflicted with Dr. McMillan's opinion, the ALJ

cited the short length of Dr. McMillan's relationship with Norton as a basis to give no weight to her opinion. In sum, the ALJ gave sufficient reasons, supported by the record, for declining to give any weight to Dr. McMillan's opinion on disability.

***Dr. Laing's Opinion.*** Dr. Laing was not Mr. Norton's treating physician but a non-examining medical expert who testified based on his review of Norton's medical records. Therefore, the requirements of *Newton* do not control the ALJ's determination of what weight to accord Dr. Laing's opinion. "In evaluating the opinion of a non-treating physician, an ALJ is free to incorporate only those limitations that he finds 'consistent with the weight of the evidence as a whole.'" *Thompson v. Colvin*, No. 4:16-CV-00553, 2017 WL 1278673, at *12 (S.D. Tex. Feb. 14, 2017) (citing *Andrews v. Astrue,* 917 F. Supp. 2d 624, 642 (N.D. Tex. 2013)).

Dr. Laing testified that Norton could lift or carry 10 lbs. on occasion and 5-10 lbs. frequently; could sit for six hours in an eight hour day; could stand for 90 minutes possibly up to two hours; and could use his hands bilaterally for fingering and handling on a frequent basis but not continuously. Dr. Laing testified there were no limitations on Norton's feet, but he could not work on ladders or scaffolds; all other postural limitations would be on an occasional basis; and there were no environmental, visual, or auditory limitations. Dkt. 8-3 at 94-95.

The ALJ gave no weight to Dr. Laing's testimony regarding the limitations of two hours on walking/standing, and for lifting/carrying 10 pounds occasionally and 5-10 pounds frequently. The ALJ found such limitations too restrictive based on the evidence of Norton's activities of daily living in the record. Dkt. 8-3 at 37. In the function report submitted in connection with his application for benefits, Dkt. 8-7 at 13-20, Norton stated that he could feed and water his cats daily; shower, shave (although with some difficulty), feed, and use the toilet himself; cook a meal once or twice a week and make sandwiches; and do occasional light cleaning, dishes, and

laundry. He stated he went outside hourly, and did food shopping in stores a couple times a month. He reported that he read and watched TV (although his concentration is not as good as it used to be), attended church twice a week, and spent time with family. *Id.* ALJ did give weight to Dr. Liang's opinion regarding Norton's ability to perform frequent handling and use of his fingers, because it was consistent with the medical evidence and with Norton's activities of daily living, as reported by Norton himself.

In addition, the ALJ gave some weight to the opinions of agency consultants who reviewed Norton's medical records on initial review in October 2013 and on reconsideration in January 2014. The state agency consultants concluded Norton could lift and carry 20 pounds occasionally and 10 pounds frequently, and could walk and stand 6 hours in an 8 hour work day. *See* Dkt. 8-4 at 2-10, 22-32.

It is the ALJ's job is to determine what weight to give medical opinion evidence, and the ALJ here gave proper consideration of the factors in 20 C.F.R. § 404.1527(d)(2) and the objective medical evidence when evaluating the medical opinion evidence in this record. "The power to judge and weigh evidence includes the power to disregard" evidence. *Greenspan*, 38 F.3d at 238. The court concludes that the ALJ did not err in weighing the medical opinion evidence in making her RFC determination.

### 1.B  Credibility Determination in RFC Assessment

When a claimant alleges symptoms, such as pain, limiting his ability to work, he must establish a medically determinable impairment capable of producing the pain or other symptoms. *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995) (citing 20 C.F.R. §404.1529). Once such a medical impairment is established, the subjective complaints must be considered along with the medical evidence in determining the individual's work capacity. The regulations instruct that a

claimant's statements about the intensity, persistence, or functionally limiting effects of the symptoms must not be rejected "solely because the available objective medical evidence does not substantiate [those] statements." 20 C.F.R. §404.1529(c)(2); 20 C.F.R. §416.929(c)(2). When such statements are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record. SSR 96-7p, *3. An ALJ's credibility findings on a claimant's subjective complaints are entitled to deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

The ALJ found that Norton's impairments could reasonably be expected to cause the alleged symptoms. The ALJ then stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Dkt. 8-3 at 34. The ALJ continued:

> In terms of the alleged disabling pain, the undersigned finds that the objective evidence does not support [Norton's] allegations. Factors for consideration in evaluating an individual's subjective complaints of pain include whether there is documentation of persistent significant limitations of range of motion, muscle spasms, muscular atrophy from lack of use, significant neurological deficits, and no-alleviation of symptoms by medication. None of the examinations disclosed the above findings to any significant degree.

Dkt. 8-3 at 35. Norton argues that the ALJ imposed an incorrect legal standard on her evaluation of his pain because there is no requirement that all of the factors listed in the above paragraph be shown before the ALJ can find subjective complaints of pain credible. However, consideration of the factors listed above was only part of the basis for the ALJ's credibility assessment. The reasons cited by the ALJ also include the following:

> [Norton] engaged in pursuits involving the performance of functions that are transferable to a work setting. The claimant performs personal care activities independently. He cooks, does light cleaning, washes dishes, and does laundry. He shops in stores for food twice a month for two hours. He reads, listens to

music, and watches television. He spends time with family every day and goes to church twice a week.

Dkt. 8-3 at 35 (citing Ex. 3E, Dkt. 8-7 at 12-33).

The ALJ also relied on objective medical evidence. The ALJ cited medical records for the period since his alleged onset of disability that indicated some pain but potential for rehabilitation and no contraindications to therapy and no acute distress. Dkt. 8-3 at 35-36; Dkt. 8-8 at 104. The ALJ noted that the record as a whole showed that Norton received routine and conservative treatment from his physicians, and there was no evidence of frequent emergency room visits for extreme symptomatology, which showed control of his impairments with medication. Dkt. 8-3 at 36. Although Norton testified to side effects from his medications, office treatment notes did not corroborate those allegations. Norton points out that P.A. Southward referred him to physical therapy and to the Interventional Spine & Pain Management clinic, but the record shows only two visits to each, Dkt. 8-8 at 85-89, 102-05, and the ALJ noted he was not being treated by specialists at the time of the hearing. Based on the record, the court finds the ALJ's credibility finding is supported by substantial evidence and entitled to deference.

### 2. ALJ's Hypothetical Question and Step-Five Determination

*2.A Grid Rule 201.14.* Norton contends that the ALJ erred in making her RFC and credibility determinations, and absent those errors she would have found him limited to sedentary work. If the ALJ had found Norton's RFC limited him to sedentary work, he would have been classified as disabled according to Grid Rule 201.14 due to his age, education level, and lack of transferable skills to sedentary work. *See* Medical Vocational Rule 201.14. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. However, the court has already concluded that the ALJ did not

err in determining Norton's RFC or in assessing his credibility. Thus, The ALJ did not err in failing to apply grid rule 201.14 which would have classified Norton as disabled.

*2.B  Hypothetical question.* An ALJ's hypothetical question to a vocational expert must reasonably incorporate all the limitations recognized by the ALJ, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the question. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). At the hearing, the ALJ included in her hypothetical to the VE, all the RFC limitations she found supported by the record:

> Q: Let's assume we have an individual, who's Claimant's age, education, and work history. This individual can do light work. This individual can occasionally climb stairs and ramps, and crouch, balance, and stoop; no climbing of ropes, ladders, or scaffolds; no crawling or kneeling; no overhead reaching with the . . . non-dominant left arm; and can frequently handle and finger with bilateral hands. Would this individual be able to perform any of the Claimant's past work?
> A: No.
> Q: [Are there] other jobs that this individual could do?
> A: . . . he could work as a food assembler. . . . there would also be a caterer helper . . . there would also be a cafeteria counter attendant or a line server.

Dkt. 8-3 at 102-09. Norton's counsel was given the opportunity to examine the vocational expert, but declined to do so. Dkt. 8-3 at 108. As a result, Norton failed to satisfy his burden to prove he could not perform the types of jobs identified by the vocational expert. *See Masterson*, 309 F.3d at 273 (substantial evidence supported the ALJ's finding of no disability where, on appeal, claimant argued the ALJ asked improper hypothetical questions, but at the hearing claimant failed to cross examine the VE regarding the hypothetical questions); *Perez v. Barnhart*, 415 F.3d 457, 464 ("We have held that where the claimant offers no evidence contrary to the VE's testimony, the claimant fails to meet his burden of proof under the fifth step of the disability analysis." (citing *Masterson*, 309 F.3d at 273)).

### III. Conclusion

The court concludes that the ALJ's decision is supported by substantial evidence and is not based on an error of law. Therefore, Norton's motion is denied and the Commissioner's decision denying benefits is affirmed.

Signed at Houston, Texas, on January 29th, 2018.

_____
Christina A. Bryan
United States Magistrate Judge